## A05A0496. SUWANEE PEDIATRICS, LLC v. FAN.
### (618 SE2d 3)

JOHNSON, Presiding Judge.

Jiong Fan, M.D., sued Suwanee Pediatrics, LLC, for breach of an employment contract. After a bench trial the trial court found that Suwanee Pediatrics breached the agreement by terminating Dr. Fan without cause, and entered judgment in favor of Dr. Fan for $17,751. Suwanee Pediatrics appeals.

1. Suwanee Pediatrics contends it was entitled to terminate its contract with Dr. Fan based on the terms of the contract. We agree.

Dr. Bolaji Odusina is president and sole shareholder of Suwanee Pediatrics, LLC, a medical practice. Dr. Odusina and Dr. Fan negotiated a contract in which Dr. Fan agreed to work at Suwanee Pediatrics as a pediatrician full-time for two years beginning March 4, 2002. Dr. Fan was to be paid a salary of $100,000 per year.

The contract provided that either party could terminate the agreement "for any reason, or for no reason" by giving the other party 60 days advance notice of such termination. It further provided that Suwanee Pediatrics could terminate the agreement without advance notice "for cause." The agreement defined "for cause" as meaning, among other things, misappropriation of any property of the corporation, breach or default by Dr. Fan "in the performance or observance of any term, covenant or condition to be performed or observed by [Dr. Fan] under this agreement"; and "any other cause determined by the corporation to be harmful or [injurious] to the corporation's practice of medicine, to the corporation's reputation, or to the corporation's patients." The contract also provided that Dr. Fan was obligated to "comply with all the Corporation's reasonable directions and orders in the practice."

About three months after Dr. Fan began working at Suwanee Pediatrics, Dr. Odusina decided that Dr. Fan was not contributing to the practice as expected. Dr. Odusina suggested that Dr. Fan either reduce her hours to part-time or leave the practice altogether. The two began negotiating for Dr. Fan to work part-time. On June 26 or 27, 2002, Dr. Fan presented Dr. Odusina with a written proposal for a change in the employment relationship.

On that same day, Suwanee Pediatrics received a certification visit regarding its continued eligibility for insurance payments. Among the items examined by the reviewers was Suwanee Pediatrics' manual for its medical practice. Some portions of the manual had been given to Dr. Odusina and others were paid for by her. The manual was a looseleaf binder which consisted of several sections, including an employee handbook consisting of about 16 pages (of which the employees get copies), job duties and descriptions for

various office staff, fire/earthquake/tornado procedures, risk management, safety, security, infection control, and work-life quality policies, patient questionnaires, and lists of important telephone numbers. Dr. Odusina testified that the manual is important for certification purposes, and that it took her a long time to compile the manual.

While Dr. Odusina and her office manager/husband were out of the office for a medical appointment, Dr. Fan photocopied more than 120 pages of the manual. Dr. Odusina's staff witnessed the copying and told her of it the same day. When confronted about the copying, Dr. Fan stated that she copied the manual because she wanted to have a copy of it. According to Dr. Odusina, she and the office manager asked Dr. Fan to return the documents that day, but she did not. Dr. Fan denied being told to return them that day. Dr. Odusina considered the documents proprietary and thought Dr. Fan would use the documents to start her own practice. According to Dr. Odusina, a person in possession of the manual could use it to open a medical practice the next day.

The day after this incident, Dr. Odusina asked Dr. Fan to return the documents. Dr. Fan did not return them. Dr. Odusina then wrote a 60-day termination letter and presented it to Dr. Fan. Dr. Fan agreed that she received the letter that day. The letter indicated the parties had not reached an agreement on part-time employment and that the contract was being terminated. The letter also stated that Dr. Fan had copied the practice's documents and had been asked to return them, but refused.

Dr. Fan testified that the next day the office manager told her to keep the documents. The manager denied that, saying he asked Dr. Fan to return them. On July 1, 2002, Dr. Odusina told Dr. Fan that if she failed to return the documents by the following day, she would be terminated for cause. Dr. Fan admitted that she refused to return the documents when asked on July 1, saying she would return them when she left the practice.

When Dr. Fan refused to return the documents on July 2, 2002, she was given an immediate termination notice and asked to leave the premises. This termination notice referenced the prior 60-day notice and the request of the previous day. The notice indicated that Dr. Fan had refused to return the documents and therefore was terminated immediately.

The trial court held that Dr. Odusina had no cause to immediately terminate the contract, and that only the initial 60-day (no-cause) termination notice was valid. Therefore, it held, Dr. Odusina was required to allow Dr. Fan to continue working for the 55 remaining days in her contract and pay her for that time period. We hold that the immediate termination was valid.

The contract terms in this case are broad. They gave Dr. Odusina the right to terminate Dr. Fan immediately for misappropriation of corporate property, for any violation, breach or default in the performance of any term, covenant or condition to be performed under the contract, and for any other cause determined by the corporation to be harmful or injurious to the corporation's practice of medicine. The contract also required Dr. Fan to comply with Suwanee Pediatrics' reasonable directives. Dr. Odusina repeatedly asked Dr. Fan to return copies of corporate documents made at the time the contract was being renegotiated, documents which had little to do with Dr. Fan's employment and which the trial court found were proprietary in nature, but which Dr. Fan refused to relinquish. The language of the contract permitted Dr. Odusina to take the action that she did.[1]

While this Court applies the "clearly erroneous" standard to the trial court's factual findings, we owe no deference to the trial court's legal conclusions.[2] Under the circumstances presented here, the trial court erred in concluding that Dr. Odusina had no right to immediately terminate the contract.

2. Suwanee Pediatrics contends the trial court erred in finding that it waived its right to discharge Dr. Fan by continuing to negotiate a new contract despite the fact that Dr. Fan had taken and not returned the documents. We point out, though, that the trial court did not include any such finding or conclusion in its order. In any event, there was no waiver where it is undisputed that Dr. Odusina demanded a return of the documents several times, including on July 1, 2002. Under the circumstances, there was no waiver.[3]

3. Based on our holding in Division 1, Suwanee Pediatrics' remaining enumerations of error concerning Dr. Fan's recovery under the contract are rendered moot.

*Judgment reversed. Ruffin, C. J., and Barnes, J., concur.*

DECIDED MAY 10, 2005 —
RECONSIDERATION DENIED JULY 15, 2005.

*Gary J. Leshaw*, for appellant.

---

[1] See generally *Smitherman v. Mary House Ministries*, 200 Ga. App. 116, 117 (1) (407 SE2d 58) (1991).

[2] See *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000).

[3] See *Holmes Mfg. Co. v. Fraker*, 85 Ga. App. 83, 85 (68 SE2d 172) (1951) (no waiver of bond requirement in employment contract where employer allowed employee to work for six months without bond, but insisted throughout period that he obtain bond).

*Delong, Caldwell, Novotny & Bridgers, Earnest H. Delong, Jr., Michael A. Caldwell*, for appellee.